**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Josephine Hofberger, | No. CV-17-02055-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff Josephine Hofberger's ("Plaintiff") appeal from the Acting Social Security Commissioner's ("Commissioner") denial of her application for a period of disability under the Social Security Act, 42 U.S.C. § 416(i) (2012). (Doc. 1). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in improperly assessing the credibility of Plaintiff's allegations, improperly rejecting the opinion of a treating physician, and misidentifying Plaintiff's severe medical impairments. (Doc. 23 at 1–2). Additionally, Plaintiff moves to amend her complaint to clarify the dates for which she is seeking disability benefits. The Court now rules on Plaintiff's appeal and Plaintiff's motion.

**I.    Background**

The parties are familiar with the background information in this case, and it is summarized in the ALJ's decision. (*See* Doc. 10 at 23–34). Accordingly, the Court will reference the background only as necessary to the decision below.

## II. Legal Standard

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In other words, substantial evidence means "relevant evidence which a reasonable person might accept as adequate to support [the ALJ's] conclusion." *Id.*

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In determining whether there is substantial evidence to support a decision, the Court weighs "both the evidence that supports and [that which] detracts from the ALJ's conclusion." *Magallanes*, 881 F.2d at 750 (citations omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted). "The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). The Court, however, "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks and citation omitted).

The Court is not charged with reviewing the evidence and making its own

judgment as to whether Plaintiff is or is not disabled; rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

## A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must be "under a disability." 42 U.S.C. § 423(a)(1)(E) (2012). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is "under a disability only if his physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1] *Id.* § 423(d)(2)(A).

## B. The Five-Step Evaluation Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721.

At step one, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If the claimant is not gainfully employed, the inquiry moves to step two, at which the ALJ

---

[1] Under the Act, it is unnecessary to determine "whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if [the claimant] applied for work." *Id.* § 423(d)(2)(A). The Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities,"[2] *id.* § 404.1520(c), and must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death," *id.* § 404.1509 (incorporated by reference in *Id.* § 404.1520(a)(4)(ii)). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* If, however, the ALJ finds a severe impairment, the inquiry moves to step three, which requires determining whether the impairment "meets or equals" one of the impairments listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. *Id.* If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" ("RFC") is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1). At step four the ALJ determines whether, based on the RFC assessment, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform her past relevant work, the claimant is not disabled. *Id.* If not, the ALJ proceeds to the fifth and final step, at which the ALJ determines whether the claimant, based on the RFC assessment and her "age, education, and work experience," can make an adjustment to other work that exists in the national economy. *Id.* § 404.1520(a)(4)(v). If the claimant can perform other work, she is not disabled. *Id.* If the claimant cannot perform other work, she will be found disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* § 404.1520(a)(3).

---

[2] Basic work activities are the "abilities and aptitudes to do most jobs," such as walking, standing, sitting, lifting, carrying, use of judgement, responding appropriately to co-workers, and dealing with changes in a routine work setting. *Id.* § 404.1522(b).

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2013 (the alleged onset date), and had two severe impairments,[3] satisfying the first and second steps of the inquiry. (Doc. 10-3 at 16, 18–22). Under step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in the Social Security regulations that automatically result in a finding of disability. (*Id.* at 22).

Before moving to step four, the ALJ conducted an RFC determination in light of proffered testimony and objective medical evidence. (*Id.* at 23–32). The ALJ found that Plaintiff "has the residual functional capacity to perform a limited range of light work as defined in 20 C.F.R. 416.967(b)" with certain exceptions. (*Id.* at 23–32).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 32–33). At step five, the ALJ determined that, based on the RFC assessment and Plaintiff's age, education, work experience, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 33–34). Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.* at 34).

### III. Analysis

Plaintiff asserts that the ALJ erred in denying her benefits for three reasons: (1) the ALJ improperly assessed the credibility of Plaintiff's testimony; (2) the ALJ improperly rejected the opinion of a treating physician; and (3) the ALJ misidentified Plaintiff's severe medical impairments. (Doc. 23 at 1–2). The Court will address each argument in turn.

### A. Whether the ALJ Improperly Discredited Plaintiff's Testimony

The Court first turns to Plaintiff's argument that "the ALJ erred by failing to provide clear and convincing reasons for discrediting the claimant's testimony," (Doc. 11

---

[3] The ALJ found that Plaintiff had the following severe impairments: (1) status post lumbar fusion and (2) status post cervical fusion. (Doc. 10-3 at 18–22).

- 5 -

at 19), when the ALJ concluded that Plaintiff's testimony was "not entirely credible," (Doc. 10-3 at 25).

### 1. Legal Standard

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation marks and citations omitted). The ALJ, therefore, cannot reject a claimant's subjective symptom testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (internal quotation marks and citations omitted) (emphasis in original).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citations omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Accordingly, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ may consider, among other factors: "[a claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and

1 third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### 2. Analysis

In the present case, there is no dispute that Plaintiff "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," fulfilling step one of the credibility analysis. *Lingenfelter*, 504 F.3d at 1036; (Doc. 19 at 6). It is also undisputed that there is no affirmative evidence of malingering. (Doc. 19 at 6). The ALJ, therefore, was required provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony about the severity of her symptoms. *Lingenfelter*, 504 F.3d at 1036.

Plaintiff argues that the ALJ's credibility analysis is not supported by clear and convincing reasons. (Doc. 11 at 19). Specifically, Plaintiff argues that the ALJ erred in her analysis of Plaintiff's medical evidence, her work activity, and her statements and activities. (Doc. 23 at 7–11). The Court will address these arguments in turn.

#### a. Medical Evidence

The ALJ found that "the medical evidence of record does not establish that the claimant's impairments resulted in limitations that would render the claimant totally disabled" because "the claimant's allegations of greater pain, fatigue, and functional limitations are not supported to the extent alleged." (Doc 10-3 at 28). The ALJ discredited Plaintiff's testimony in part because she found that Plaintiff's medical record did not reflect the level of symptoms that Plaintiff alleged. (Doc. 10-3 at 28–29). An ALJ, however, "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ did precisely that. (*See* Doc. 10-3 at 28–29). The ALJ's analysis of the medical evidence, therefore, cannot support the ALJ's rejection of Plaintiff's subjective symptom testimony.

### b. Work Activity

The ALJ cited Plaintiff's work activities as another reason for finding a lack of credibility. (Doc. 10-3 at 29). The ALJ cites Plaintiff's six-month unsuccessful work attempt and the fact that Plaintiff was working part-time ten hours per week at the time of the hearing as reasons to discredit Plaintiff's testimony. (*Id.*) The ALJ contends that these acts "indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (*Id.*) Under the clear and convincing standard applied here, "[g]eneral findings are insufficient." *Lester*, 81 F.3d at 834. The ALJ, however, fails to elaborate on this claim with any specific explanation why Plaintiff's failed work attempt and part-time job undermine any of her testimony. (*See* Doc. 10-3 at 29). Accordingly, because the ALJ did not give "specific, clear and convincing reasons" for her conclusion regarding Plaintiff's work activity, this cannot support the ALJ's rejection of Plaintiff's subjective symptom testimony.

### c. Statements and Activities

In making her credibility determination, the ALJ concluded that some of Plaintiff's statements were inconsistent with the record and that some of Plaintiff's activities were inconsistent with her testimony. (*Id.* at 28–29). The ALJ noted Plaintiff's use of a prescribed cane, claims about mental impairments, dropping items, and memory issues, non-use of her back brace and walker at a December 2013 meeting, "generally unpersuasive appearance and demeanor while testifying at the hearing," continued smoking, and two-week trip to Germany. (*Id.* at 29). The ALJ considered these factors in finding Plaintiff's testimony "not entirely credible." (*Id.*) The court will consider these factors in turn.

### i. Prescribed Cane

The ALJ attempts to discredit Plaintiff's use of a cane by claiming it "was not prescribed based on objective findings but was rather based on the claimant's request." (*Id.* at 28). The record, however, does not support the claim that the cane was prescribed based on Plaintiff's request. (Doc. 10-12 at 210). Further, the ALJ does not provide any

reasons why Plaintiff's use of a prescribed cane undermines her credibility. (*See* Doc. 10-3 at 28–29).

### ii. Plaintiff's Claims

The ALJ concluded that Plaintiff's claims about mental impairments, dropping items, and memory issues were not supported by affirmative evidence in the record. (*Id.*)

The ALJ concluded that "there is no evidence of significant depression." (*Id.* at 29). The record, however, reflects that Plaintiff was diagnosed with depression and was taking medication to control it. (Doc. 10-11 at 6). Similarly, the ALJ claimed that "there are no reports to [Plaintiff's] doctors that she drops items, though she alleged doing so at the hearing." (Doc. 10-3 at 29). Dr. Baker of the Core Institute, however, noted that Plaintiff indicated she was "dropping stuff" in one of his reports. (Doc. 10-8 at 151). Finally, the ALJ concluded that there were "no memory issues noted." (Doc. 10-3 at 29). In Dr. Greg Peetoom's assessment, however, he indicated that Plaintiff "ha[d] become more forgetful, including forgetting words." (Doc. 10-9 at 211). The ALJ's assertion that these claims are inconsistent is insufficient to undermine Plaintiff's credibility.

### iii. Walker and Brace

The ALJ cites the fact that Plaintiff "drove alone to a December 2013 consultative examination and her back brace and walker were not observed during the course of her evaluation" as a reason to discredit Plaintiff's testimony. (Doc. 10-3 at 28). While Plaintiff indicated at the hearing that she does not use the walker every day, (Doc. 10-3 at 54–55), the fact that Plaintiff drove alone to the December 2013 examination and was not observed with her brace or walker is inconsistent with her October 2013 function report in which she indicated that her medications do not allow her to drive and that she uses the walker and brace "all the time except when laying down or not in bed." (Doc. 10-7 at 33, 36). This is an inconsistency between Plaintiff's testimony and conduct that the ALJ may consider. *See Light*, 119 F.3d at 792. However, while "[a]n ALJ may consider inconsistent statements by a claimant in assessing her credibility," "[a] single discrepancy fails . . . to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*,

868 F.3d 764 (9th Cir. 2017). This inconsistency alone, therefore, is insufficient to fully undermine Plaintiff's credibility.

### iv. Appearance and Demeanor at Hearing

The ALJ found that Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing" undermined her credibility when she "appeared sedated and almost slurred her words due to pain medications presumably; however, the medical evidence of record is notably silent in terms of similar behavior at any of her appointments." (Doc. 10-3 at 29). This is a legitimate clear and convincing reason to discount Plaintiff's testimony. Further, Plaintiff does not dispute this assessment. (*See* Doc. 23).

### v. Smoking and Trip to Germany

The ALJ indicates that Plaintiff's "continued smoking despite being instructed to stop" and two-week trip to Germany undermine Plaintiff's credibility. (Doc. 10-3 at 29). An ALJ may consider "failure . . . to follow a prescribed course of treatment" in weighing a claimant's credibility. *Orn*, 495 F.3d at 636. Likewise, an ALJ may consider ability to travel when making credibility claims. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ therefore properly concluded that Plaintiff's continued smoking and two-week trip to Germany undermined Plaintiff's credibility.

### 3. Conclusion

The ALJ erred in rejecting Plaintiff's subjective symptom testimony on the basis of contradictions with medical evidence, her work activity, her use of a cane, and her claims about mental impairments, dropping items, and memory issues. The ALJ, however, correctly discredited Plaintiff's testimony because of her non-use of her back brace and walker at a December 2013 meeting, her appearance and demeanor at the hearing, her continued smoking, and two-week trip to Germany. These reasons, taken together, form "substantial evidence" from which the ALJ could discredit Plaintiff's testimony. *Thomas*, 278 F.3d at 959. The Court, therefore, "may not engage in second-guessing." *Id.* The ALJ did not commit harmful error in rejecting Plaintiff's subjective

symptom testimony.

### B. Whether the ALJ Improperly Rejected the Examining Physician's Opinion

Next, the Court turns to Plaintiff's argument that the ALJ improperly rejected the opinion of a treating physician.

#### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 834. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Where, as in this case, an examining doctor's opinion contradicts a treating physician's opinion, the ALJ "may not reject [the treating physician's] opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Id.* (citations omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation marks omitted).

The Social Security Act provides that:

> Generally, we give more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.

20 C.F.R. § 404.1527(c)(2). An ALJ must consider the length of the treatment relationship and the frequency of examination. *Id.* § 404.1527(c)(2)(i). "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* An

ALJ must also consider the nature and extent of the treatment relationship. *Id.* § 404.1527(c)(2)(ii). "Generally, the more knowledge a treating source has about [a claimant's] impairment(s) the more weight we will give to the source's medical opinion." *Id.* In making this determination, an ALJ must "look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.* If the treating physician has "reasonable knowledge of [a claimant's] impairment(s)," an ALJ must "give the source's medical opinion more weight than we would give it if it were from a nontreating source." *Id.* An ALJ must also give more weight to medical opinions that are supported by "medical signs and laboratory findings," medical opinions that are consistent with the record as a whole, and medical opinions "of a specialist about medical issues related to his or her area of specialty." *Id.* §§ 404.1527(c)(3), 404.1527(c)(4), 404.1527(c)(5). An ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

When reviewing an ALJ's determination, this Court must uphold an ALJ's decision—even if the ALJ could have been more specific in her opinion—if the Court can reasonably infer if and why the ALJ rejected an opinion. *Magallanes*, 881 F.2d at 755; *see also Molina*, 674 F.3d at 1112 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotation marks omitted). Moreover, "if evidence exists to support more than one rational interpretation, [the court] must defer to the [ALJ's] decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

### 2. Analysis

Plaintiff argues that "the ALJ erred by failing to provide specific and legitimate reasons for failing to assign controlling weight to the treating physician's opinion." (Doc. 11 at 10).

Here, the ALJ gave the opinion of John Ehteshami, M.D.—Plaintiff's treating

physician—"little weight." (Doc. 10-3 at 30). The ALJ discounted Dr. Ehteshami's opinion because he "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant," his reports "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled," and he "simply checked boxes for his opinions and therefore did not offer any meaningful explanation for the claimant's opined limitations." (Doc. 10-3 at 31). The Court will address these reasons in turn.

### a. Reliance on Subjective Report of Symptoms and Limitations

The ALJ claims in her report that Dr. Ehteshami "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Doc. 10-3 at 31). The ALJ explains that because she had already discredited Plaintiff's subjective symptom testimony, she could not rely on any medical opinions based thereon.

A physician's opinions relying *only* on a claimant's subjective complaints are no more reliable than the complaints themselves. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, however, Dr. Ehteshami indicated that he used imaging and a physical examination to reach his opinion. (Doc. 10-12 at 96). The ALJ, on the other hand, does not cite any evidence to support her conclusions. (*See* Doc. 10-3 at 31). The ALJ's failure to provide "specific and legitimate reasons supported by substantial evidence in the record" render this an improper basis on which to reject Dr. Ehteshami's opinion. *Lester*, 81 F.3d at 834 (quotation marks and citations omitted).

### b. Failure to Reveal Clinical and Laboratory Abnormalities

The ALJ next claims that "Dr. Ehetshami's own reports . . . fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Doc. 10-3 at 31). The ALJ, however, does not elaborate on this conclusory statement. (*See id.*) The record, taken as a whole, contains evidence of significant clinical and laboratory abnormalities reflected in Dr. Ehteshami's reports.

(*See, e.g.*, Doc. 10-10 at 75–76). The ALJ failed to provide "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 834 (quotation marks and citations omitted). The ALJ therefore erred in discounting Dr. Ehteshami's opinion on this basis.

### c. Checking Boxes

The ALJ also asserts the fact that "Dr. Ehteshami simply checked boxes for his opinions and therefore did not offer any meaningful explanation for the claimant's opined limitation" as a basis for rejecting his opinion. (Doc. 10-3 at 31). An ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Here, however, Dr. Ehteshami explains that his report is based on imaging and a physical examination. (Doc. 10-12 at 96). Further, Dr. Ehteshami had been treating Plaintiff since 2011, (Doc. 10-8 at 5), and had evaluated and treated her regularly ever since, at least through 2015, (*see* Doc. 10-8 at 5; Doc. 10-10 at 15, 17, 66, 68; Doc. 10-12 at 88, 95). Dr. Ehteshami's records, taken as a whole, reflect an extensive familiarity with Plaintiff's condition that provides ample support for his opinions. (S*ee id.*) This, therefore, is not a valid reason to reject Dr. Ehteshami's opinion.

### d. Other Factors

The record reflects, and the Commissioner admits, that the ALJ did not consider the factors outlined in 20 C.F.R. § 404.1527(c)(2). (Doc. 19 at 19). The Ninth Circuit has explained that when an ALJ does not consider "factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" as outlined in 20 C.F.R. § 404.1527(c)(2), "[t]his failure alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Further, "[a]n ALJ may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Popa*, 872 F.3d at 907. These factors provide additional bases for questioning the ALJ's assessment of Dr. Ehteshami's opinion.

### 3. Conclusion

The ALJ repeatedly failed to provide "specific and legitimate reasons supported by substantial evidence in the record," which are required to reject a treating physician's opinion. *Lester*, 81 F.3d at 834 (quotation marks and citations omitted). The ALJ also failed to analyze the factors outlined in 20 C.F.R. § 404.1527(c)(2) as required. *Trevizo*, 871 F.3d at 676. The ALJ therefore should have given Dr. Ehteshami's opinion more weight.

### C. Whether the ALJ Misidentified Plaintiff's Severe Medical Impairments

Finally, the Court addresses Plaintiff's argument that "the ALJ erred by misidentifying the claimant's severe medical impairments" because the ALJ "fail[ed] to identify the claimant's severe spinal arthritis." (Doc. 11 at 24).

### 1. Legal Standard

At step two in the five-step process, an ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment under the Social Security Act is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities," *id.* § 404.1520(c), and has lasted for "a continuous period of at least twelve months," is expected to last for such a period, or is expected "to result in death," *id.* § 404.1509. The claimant has the burden of establishing a severe impairment. *See Reddick*, 157 F.3d at 721.

### 2. Analysis

Plaintiff argues that "the ALJ committed harmful error" by failing to identify Plaintiff's spinal arthritis as a severe impairment. (Doc. 11 at 24).

The record, taken as a whole, does not establish that Plaintiff was diagnosed with "spinal arthritis" rising to the level and duration of a severe impairment under the Social Security Act. *See* 20 C.F.R. § 404.1520. Plaintiff was never diagnosed with "spinal arthritis," (*see, e.g.*, Doc. 10-10 at 15, 17, 66), and Plaintiff provides insufficient evidence

that this condition, even by another name, would meet the severity or duration requirement, (*see* Doc. 23 at 11).

In addition, even if the ALJ erred in failing to recognize Plaintiff's alleged impairment as severe, any such error would be harmless. The Ninth Circuit has found failure to list an impairment as severe at step two to be a harmless error when the ALJ considered limitations posed by the impairment later in the decision-making process. *Lewis v. Astrue*, 489 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ considered both degenerative disk disease and spinal stenosis—which Plaintiff contends are different forms of arthritis of the spine—and the limitations caused by them later in her analysis. (*See* Doc. 10-3 at 23, 25). Any error in failing to include these conditions in step two would therefore be harmless. Further, because "[s]tep two is merely a threshold determination meant to screen out weak claims," and "is not meant to identify the impairments that should be taken into account when determining the RFC," failure to identify an impairment as severe at step two cannot be harmful error when step two is decided in a claimant's favor. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Because step two was resolved in Plaintiff's favor, (Doc. 10-3 at 18–22), failure to identify any other impairment as severe would be harmless.

### 3. Conclusion

Plaintiff did not meet her burden of proof in establishing "spinal arthritis" as a severe impairment; the ALJ therefore did not err in her decision not to identify it as such. Further, because the ALJ considered Plaintiff's conditions in later steps and resolved step two in Plaintiff's favor, any potential error would be harmless. Accordingly, the Court finds no harmful error in the ALJ's failure to include "spinal arthritis" as a severe medical impairment under step two of the five-step analysis.

## D. Error

### 1. Legal Standard

In Social Security disability actions, the Court must analyze the error "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).

"[E]rrors are harmless if they are 'inconsequential to the ultimate nondisability determination,'" and the Court may not "set aside the denial of a disability claim unless 'the [Commissioner's] findings are not supported by evidence *in the record as a whole*.'" *Molina*, 674 F.3d at 1121 (first quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); and then quoting *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)) (emphasis in original). When the ALJ has erred, the Court must determine "not whether the ALJ would have made a different decision absent any error," but rather "whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162.

### 2. Analysis

The ALJ's errors within her credibility analysis were harmless, and her decision to discredit Plaintiff's subjective symptom testimony, while erroneous in part, remains legally valid for the reasons discussed above.

The ALJ's reasoning regarding Dr. Ehteshami's opinion is erroneous, and this error is integral to the fair determination of benefits. The ALJ's failure to properly weigh Dr. Ehteshami's opinion introduces doubt into the ALJ's RFC findings, and resolution of the ALJ's error is decisive when determining if Plaintiff is entitled to disability benefits. Thus, the ALJ committed harmful error.

### E. Remand

Having found that the ALJ committed harmful error, the Court has discretion to remand the case for further development of the record or for an award of benefits. *Reddick*, 157 F.3d at 728. The Ninth Circuit uses a three-part "credit-as-true" standard when determining if an award of benefits is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). For the Court to remand to an ALJ with instructions to calculate and award benefits, each of the following parts must be met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if all parts are met, "the credit-as-true rule may not be dispositive of the remand question in all cases;" rather, "the credit-as-true doctrine envisions some flexibility." *Id.* (internal quotation marks and citations omitted).

The Court must determine whether "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). In making this determination, the Court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. Here, because the ALJ must still weigh the treating physician's opinion—while giving it the proper weight—against that of the examining physicians, further proceedings are appropriate.

## IV.  Conclusion

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion to Amend Complaint, (Doc. 22), is granted. The period in dispute is limited to June 26, 2013 through September 2, 2015. The Court deems the Complaint to conform to this limitation.

**IT IS ORDERED** that the Commissioner's decision denying benefits is **VACATED**, and the case is **REMANDED** to the agency for further proceedings. The Clerk of the Court shall enter judgment accordingly.[4]

Dated this 8th day of August, 2018.

James A. Teilborg
Senior United States District Judge

---

[4] To the extent a mandate is required, the judgment shall serve as the mandate in this case.